

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION

EUGENE DEWITT COSTINE,

    Plaintiff,

v.                                                    ACTION NO. 2:19cv53

CORRECT CARE SOLUTIONS, LLC,
and HAMPTON ROADS REGIONAL
JAIL AUTHORITY,

    Defendants.

## OPINION AND ORDER

The plaintiff, Eugene Dewitt Costine ("Plaintiff"), filed this Section 1983 action against the defendants, Correct Care Solutions, LLC and Hampton Roads Regional Jail Authority, seeking $10 million in damages stemming from the amputation of his left foot in June 2017, which Plaintiff claims was caused by the allegedly negligent medical care he received as an inmate in Hampton Roads Regional Jail in Portsmouth, Virginia, from 2016 to 2017. Defendant Hampton Roads Regional Jail Authority moved to dismiss to the complaint on various grounds. For the reasons stated herein, such motion is **GRANTED** only as to Hampton Roads Regional Jail Authority, which is hereby **DISMISSED** as a defendant from this case.

### I.    PROCEDURAL HISTORY

On January 29, 2019, Eugene D. Costine ("Plaintiff") filed the instant action against defendants Correct Care Solutions, LLC ("CCS") and Hampton Roads Regional Jail Authority ("HRRJA") (collectively, "Defendants") seeking $10 million in damages for injuries sustained due to the allegedly inadequate medical care Plaintiff received while incarcerated at Hampton Roads

1

Regional Jail. Complaint, ECF No. 1 (hereinafter "Compl."). On March 1, 2019, defendant CCS filed its answer to the complaint along with several affirmative defenses. ECF No. 14. On March 20, 2019, defendant HRRJA filed its answer to the complaint along with several affirmative defenses. ECF No. 18.

On March 20, 2019, HRRJA also filed the instant Motion to Dismiss the complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure along with a supporting memorandum ("Mem."). ECF Nos. 16, 17. The motion has been fully briefed. See Plaintiff's Response, ECF No. 22, and HRRJA's Reply, ECF No. 23. On June 24, 2019, the Court conducted a hearing on same. HRRJA's Motion to Dismiss is now before the Court.

## II. LEGAL STANDARD

A Rule 12(b)(1) motion permits dismissal of a complaint for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). Where, as here, a defendant makes a facial rather than factual challenge to subject matter jurisdiction, "the plaintiff, in effect, is afforded the same procedural protection as he would receive under a Rule 12(b)(6) consideration." Kerns v. United States, 585 F.3d 187, 192 (4th Cir. 2009) (internal citations omitted). Therefore, "the facts alleged in the complaint are taken as true, and the motion must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction." Id.

A Rule 12(b)(6) motion permits dismissal of a complaint where it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A Rule 12(b)(6) motion must be read in conjunction with Rule 8(a)(2), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), so as to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 550 (2007) (internal quotation omitted). To satisfy this pleading standard, a complaint must contain sufficient factual information to "state a claim to relief that is plausible on its face"

2

and "raise a right to relief above the speculative level" to survive a motion to dismiss. Id.

Because a Rule 12(b)(6) motion tests the sufficiency of a complaint without resolving factual disputes, the court "must accept as true all of the factual allegations contained in the complaint" and "draw all reasonable inferences in favor of the plaintiff." Kensington Volunteer Fire Dep't v. Montgomery County, 684 F.3d 462, 467 (4th Cir. 2012) (internal quotations omitted). However, the court is not bound by the "legal conclusions drawn from the facts" and "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." E. Shore Mkts., Inc. v. J.D. Assocs. Ltd., 213 F.3d 175, 180 (4th Cir. 2000).

### III. FACTS ALLEGED IN THE COMPLAINT

As set forth above, when deciding HRRJ's Motion to Dismiss, the Court must assume the truth of all well-pleaded factual allegations contained in Plaintiff's complaint. These allegations are as follows.

In or about November 2014, Plaintiff, a resident of Newport News, Virginia, underwent surgery on his left foot at the VCU Medical Center in Richmond. Compl. ¶ 1. He was subsequently placed under the care of Dr. Eugene Link of TPMG in Newport News, who conducted home-care visits at Plaintiff's home three times a week. Id.

On or about October 2, 2016, Plaintiff was detained in the Newport News City Jail by the Newport News Sheriff's Department. Id. ¶ 11. At that time, Plaintiff's foot wound was still being treated by Dr. Link, with the most recent date of such treatment occurring on or about September 29, 2016. Id. Plaintiff was held in Newport News City Jail for approximately two weeks during which time he received occasional wound treatment and bandage changes. Id. ¶ 12.

On or about October 17, 2016, Plaintiff was transferred from Newport News City Jail to Maryview Hospital where he underwent surgery to clear out an infection in his left foot. Id. ¶ 13. After approximately one week at the hospital, he was transferred to Hampton Roads Regional Jail

3

("HRRJ") "where he was to continue receiving intravenous antibiotics daily and external wound care." Id. ¶ 14. At all relevant times, "Correct Care Solutions, LLC [CCS] was responsible for providing medical care to inmates housed at the [HRRJ] as an independent medical provider or in the alternative acting as agent, servant, or employee of Defendant [HRRJA]." Id. ¶ 4.

While being held at HRRJ, and while under the care of CCS, Plaintiff's wounds were not cared for as directed in the Plaintiff's discharge instructions from Maryview Hospital. Id. ¶ 15. For example, Plaintiff was "forced to endure long gaps in between bandage [changes] causing his wounds to not heal as expected." Id.

In March 2017, CCS medical staff placed Plaintiff's foot in a Unaboot. Id. ¶ 16. After this, Plaintiff's wound care "continued to be sporadic and inadequate with Plaintiff sometimes being deprived up to a week between wound cleaning and re-bandaging." Id.

At some point between March 2017 and June 2017, Plaintiff's left foot began to emit noxious odors and to seep fluid. Id. ¶ 17. Defendants were made aware of this condition, after which time CCS instructed Plaintiff to do his "own wound care" and provided Plaintiff bandages every two to four days. Id. At some point between June 17 and 19, 2017, Plaintiff developed a fever. Id. ¶ 18. "Defendants were notified about the fever but failed to act until Plaintiff's fever reached 104 degrees." Id.

Plaintiff was then transported to Sentara Norfolk General Hospital where he was diagnosed with sepsis. Id. ¶ 19. An MRI revealed that the bones in Plaintiff's left foot were infected. Id. Because of the infection, Plaintiff's left foot was amputated up to his mid-calf. Id. Plaintiff claims that the infection in his foot was caused by CCS's "lack of care and failure to follow discharge instructions" from Maryview Hospital as well as HRRJA's failure to supervise CCS. Id. ¶ 17. On January 29, 2019, Plaintiff filed the instant lawsuit against defendants HRRJA and CCS.

IV. DISCUSSION

In its Motion, Defendant HRRJA presents a myriad of arguments under both Rule 12(b)(1) and Rule 12(b)(6) for why Plaintiff's claims against HRRJA should be dismissed. But the heart of HRRJA's motion centers on two main arguments: (1) that Plaintiff fails to allege a viable Section 1983 claim against HRRJA, and (2) Plaintiff fails to allege a viable state-law negligence claim against HRRJA. For the reasons below, the Court agrees.

### A. PLAINTIFF FAILS TO ALLEGE A VIABLE SECTION 1983 CLAIM AGAINST HRRJA.

Paragraph 8 of Plaintiff's complaint purports to raise a federal question arising under 42 U.S.C. § 1983 on the theory that Defendants violated Plaintiff's rights under "the Eighth and Fourteenth Amendments of the U.S. Constitution" by providing him inadequate medical care when he was housed in HRRJ. Compl. ¶ 8.[1]

#### 1. Applicable Law

To state an Eighth Amendment violation in this context, a plaintiff must allege two distinct elements: (1) a sufficiently serious medical need and (2) deliberate indifference to that serious medical need. Farmer v. Brennan, 511 U.S. 825, 839–40 (1994). Negligent diagnosis or treatment of a prisoner's medical condition is not enough. Estelle v. Gamble, 429 U.S. 97, 105–06 (1976). Deliberate indifference can be shown by "reckless disregard" in the face of a serious medical condition. Id. at 840. But to do so, the plaintiff must show that the defendant both knew of the risk and knew that his conduct was "inappropriate in light of that risk." Rich v. Bruce, 129 F. 3d 336, 340 n.2 (4th Cir. 1997).

Furthermore, for a government entity, like HRRJ, to be liable under Section 1983, the plaintiff must show that the entity directly caused the constitutional injury. Monell v. Dep't of

---

[1] The complaint also alleges that the Court has diversity jurisdiction under 28 U.S.C. § 1332, but this is without merit as the plaintiff, a Virginia resident, is not diverse from defendant HRRJA, a Virginia entity.

Soc. Servs. of City of New York, 436 U.S. 658, 694 (1978). Respondeat superior is not a cognizable basis to find such entity liable. Id. Rather, the plaintiff must show that some "official policy or custom" of the entity caused the alleged constitutional violation. Id.

2. Analysis

Here, HRRJA argues that Plaintiff's complaint fails to allege an Eighth Amendment violation because it merely alleges that Plaintiff's medical providers were "negligent," not "deliberately indifferent" to his medical needs. HRRJA further argues that, even if Plaintiff alleges a constitutional violation, the complaint still fails to establish HRRJA's liability for any such violation under Section 1983.

As a threshold matter, the Court acknowledges that Plaintiff's complaint only characterizes the Defendants' actions as "negligent" and fails to make any reference to "deliberate indifference" or even "gross negligence." See Compl. ¶¶ 6, 7, 20. However, the presence or absence of such legal conclusions is not dispositive when testing the sufficiency of a complaint on a motion to dismiss. The issue is whether the complaint alleges sufficient facts to support a finding of deliberate indifference that is plausible on its face. See Twombly, 550 U.S. at 550. Regardless, the Court need not decide the issue of whether Plaintiff has sufficiently alleged a violation of his Eighth Amendment rights because any such violation could only lie against CCS – not HRRJA – based on the facts alleged in the complaint.

First, the complaint alleges, and the Plaintiff admits in his brief, that CCS was solely responsible for rendering medical care to Plaintiff while he was housed in HRRJ. Compl. ¶¶ 4, 15; see Resp., ECF No. 22, at 5. Therefore, even assuming such medical care was so inadequate as to rise to the level of an Eighth Amendment violation, Plaintiff must show that HRRJA directly caused such violation for HRRJA to be liable. Yet, Plaintiff does not mention any HRRJA policy or custom in his complaint, much less one that caused the medical decision-making alleged therein.

6

Instead, as HRRJA rightly points out in its Motion, the complaint's only allegations pertaining to HRRJA's liability are premised on respondeat superior, which is not cognizable under Section 1983. See Compl. ¶¶ 7, 17.

In response, Plaintiff does not dispute that respondeat superior cannot be the basis for HRRJA's liability under Section 1983. ECF No. 22 at 3. Rather, Plaintiff argues that HRRJA's liability is based on a theory of "supervisory liability," not respondeat superior. Id. In support, Plaintiff relies on Miltier v. Brown, in which the Fourth Circuit addressed the liability of individuals in a supervisory role, including two prison wardens and two officials from the Virginia Department of Corrections. 896 F.2d 848, 854 (4th Cir. 1990). The Miltier court explained that supervisory liability under Section 1983 is "based upon a recognition that supervisory indifference or tacit authorization of subordinate misconduct may be a direct cause of constitutional injury." Id. at 855.

As a threshold matter, the Miltier court did not hold that a governmental entity, like HRRJA, can have "supervisory liability" for the acts or omissions of its agents and employees under Section 1983. But even assuming for the sake of argument that CCS qualifies as HRRJA's "subordinate" for this purpose, Plaintiff's complaint still fails to establish the requisite elements of supervisory liability under Section 1983. These elements include:

> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices,"; and (3) that there was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994) (internal citations omitted).

Here, nothing in the complaint indicates that HRRJ had actual or constructive knowledge that CCS's conduct posed a "pervasive and unreasonable risk" of constitutional injury to inmates like Plaintiff. Id. To be pervasive, the subordinate's conduct must be "widespread" or it "must have occurred on several different occasions." Randall v. Prince George's County, 302 F.3d 188, 206 (4th Cir. 2002) (internal citations omitted). But the complaint only alleges two instances when HRRJA was notified of Plaintiff's serious medical need and, by implication, the possibility of CCS's inadequate response to such need: (1) when Plaintiff's foot began to emit noxious odors and to seep fluid, Compl. ¶ 17, and (2) when Plaintiff contracted a fever, id. ¶ 18. These two occasions hardly suggest a "pervasive" risk of injury necessary to establish supervisory liability. Therefore, the Court finds that Plaintiff's complaint fails to state a viable Section 1983 claim against HRRJA.

### B. PLAINTIFF FAILS TO ALLEGE A VIABLE STATE LAW CLAIM AGAINST HRRJA.

HRRJA next argues that Plaintiff fails to state a viable state law claim against HRRJA. Specifically, HRRJA presents three independent reasons why the complaint fails to state such a claim: (1) it is time-barred; (2) HRRJA cannot be liable for medical malpractice because it is not a qualifying health care provider under Virginia law; and (3) HRRJA has sovereign immunity. The Court will address each argument in turn.

#### 1. Plaintiff's Medical Negligence Claim is Time-Barred.

HRRJA first argues that Plaintiff's medical negligence claim is barred by the one-year statute of limitations set forth in Va. Code § 8.01-243.2. Such provision provides:

> No person confined in a state or local correctional facility shall bring or have brought on his behalf any personal action relating to the conditions of his confinement until all available administrative remedies are exhausted. Such action shall be brought by or on behalf of such person *within one year after cause of action accrues* or within six months after all administrative remedies are exhausted, whichever occurs later.

Va. Code § 8.01-243.2 (emphasis added). HRRJA argues that Plaintiff's negligence claim relates to the conditions of his confinement and, because he fails to allege any exhaustion of administrative remedies, Plaintiff was required to bring such claim within one year of the cause of action accruing. HRRJA further argues that the latest the cause of action could have accrued is June 2017, when Plaintiff's foot was allegedly amputated. Therefore, Plaintiff had until June 2018 to file his complaint, but he did not file the complaint until January 29, 2019.

In response, Plaintiff does not dispute that the one-year statute of limitations set forth in § 8.01-243.2 applies to his action. Rather, Plaintiff argues that, after his amputation in June 2017, "he was then returned to the custody of Defendant HRRJ and remained in their custody until December 1, 2017." ECF No. 22 at 4. Plaintiff therefore argues that December 1, 2017, not June 2017, is the date the statute of limitations began to run. Id. As an initial matter, this allegation about returning to HRRJA's custody after June 2017 is not asserted in the complaint and therefore cannot be considered on a Rule 12(b)(6) motion. Regardless, this new factual allegation, if proven, would not save the claim given that Plaintiff filed his complaint in January 2019, which is more than one year after December 1, 2017.

In the alternative, Plaintiff argues that he was not "reasonably capable" of filing his complaint until after his release from incarceration. Id. However, being released from confinement does not exempt plaintiffs from the limitations period provided in § 8.01-243.2 Lucas v. Woody, 287 Va. 354, 363 (2014). Nor does the lack of "reasonable capability" sound in any cognizable basis for statutory or equitable tolling of the limitations period, particularly given that Virginia law disfavors equitable tolling. See Arrington v. Peoples Sec. Life Ins. Co., 250 Va. 52, 55 (1995). Therefore, the Court finds that Plaintiff's state-law negligence claim against HRRJA is barred by the applicable statute of limitations.

## 2. The Virginia Medical Malpractice Act Bars Plaintiff's Claim Against HRRJA.

HHRJA's second argument for dismissal is that HRRJA is not a "health care provider" as defined in the Virginia Medical Malpractice Act (the "VMMA"), Va. Code § 8.01-581.1, and thus cannot be sued for medical negligence under Virginia law. ECF No. 17 at 6. In response, Plaintiff admits that HRRJA is not a "health care provider" under the VMMA. ECF No. 22 at 5. But he argues that this fact does not preclude his negligence claim against HRRJA because such claim is not based on the negligent *rendering* of health care services but rather on HRRJA's lack of supervision of such services. Id. In other words, Plaintiff argues that the VMMA does not apply to his claim. The Court disagrees.

Plaintiff's complaint alleges only two possible theories of liability with respect to HRRJA: (1) that it failed to supervise CCS, Compl. ¶ 17, and (2) that it provided negligent medical care to Plaintiff by and through its alleged agent or employee, CCS, id. ¶ 4. However, there is no cause of action for negligent supervision under Virginia law. See, e.g., MCI Commc'ns Servs., Inc. v. MasTec N. Am., Inc., No. 3:17-CV-00009, 2017 WL 2274492, at *3 (W.D. Va. May 24, 2017) (collecting cases). Therefore, the only remaining theory of HRRJA's liability, as pleaded, is the second one: vicarious liability for the alleged medical negligence of CCS. Because such claim is a medical negligence claim, it is governed by the VMMA and may only be brought against a "health care provider" as defined in the statute. As noted above, Plaintiff admits that HRRJA does not satisfy this definition.

Furthermore, the fact that CCS, the alleged "agent" of HRRJA, is a qualifying health care provider does not save the claim. This Court has held that the VMMA does not recognize respondeat superior liability. Quigley v. McCabe, No. 2:17cv70, 2017 WL 3821806, at *4 (E.D. Va. Aug. 30, 2017) (citing Peck v. Tegtmeyer, 834 F. Supp. 903, 907 (W.D. Va. 1992) ("The Act contains no provision for vicarious liability, and the breadth of the statutory scheme suggests that

10

none is intended."), aff'd, 4 F.3d 985 (4th Cir. 1993)). Therefore, Plaintiff's medical negligence claim against HRRJA is barred by the VMMA and must be dismissed.

### 3. HRRJA Has Sovereign Immunity.

Lastly, HRRJA argues that Plaintiff's state law negligence claim against HRRJA is also barred by sovereign immunity. Relying on this Court's decision in Dowdy v. Pamunkey Regional Jail Authority, HRRJA argues that HRRJA is the "functional equivalent" of a municipal corporation in running a jail and thus is entitled to sovereign immunity against negligence claims arising out of its governmental function. No. 3:14-CV-003, 2014 WL 2002227, at *3 (E.D. Va. May 15, 2014) (Gibney, J.) (citing Franklin v. Town of Richlands, 161 Va. 156, 158 (1933) (defining the operation of a jail as a governmental function for immunity purposes)). Judge Gibney's decision in Dowdy is well-reasoned, and the Court finds no reason to depart from its holding. Accordingly, the Court finds that HRRJA is immune from Plaintiff's negligence claim because such claim arises out of HRRJA's governmental function.

## V. CONCLUSION

For the reasons above, the Court **FINDS** that Plaintiff's complaint fails to state a cognizable federal or state claim against defendant HRRJA. Therefore, HRRJA's Motion to Dismiss is **GRANTED** only as to Hampton Roads Regional Jail Authority, which is hereby **DISMISSED** as a defendant in this action. ECF No. 16. Plaintiff's action shall proceed against the non-moving defendant, Correct Care Solutions, LLC.

The Clerk is further **DIRECTED** to forward a copy of this Order to all Counsel of Record.

**IT IS SO ORDERED.**

July 2, 2019
Norfolk, Virginia

Robert G. Doumar /s/
Senior United States District Judge

11